1439

Elliott S. BRASWELL, Appellant v. Phyllis FAIRCLOTH, Administratrix of the Estate of Jules T. Lynch; Pepper Industries, Inc., and United States Fidelity and Guaranty Company, of which Phyllis Faircloth, Administratrix of the Estate of Jiles T. Lynch is Appellant, and United States Fidelity and Guaranty Company is Respondent.

(387 S. E. (2d) 707)

Court of Appeals

*Michael T. Cole,* and *Robert B. Ransom,* both of *Wise & Cole,* Charleston; *Arnold S. Goodstein,* of *Goodstein & Goodstein,* Summerville; and *John P. Freeman,* Columbia, *for appellants.*

*Thomas S. Wills, IV,* of Barnwell, *Whaley, Patterson & Helms,* Charleston, *for respondent.*

Heard Nov. 14, 1989.

Decided Dec. 18, 1989.

CURETON, Judge:

This case concerns insurance coverage. The case was presented to the circuit court on stipulated facts and cross-motions for summary judgment. The trial judge ruled in favor of the insurer. The court held the policy did not provide coverage because there was no "occurrence" and no "property damage" as defined in the policy. The court also

held certain exclusions were applicable. We reverse and remand.

On September 25, 1978, Pepper Industries, Inc. entered into a contractural agreement with Braswell Shipyards Inc. for the lease of property on which several storage tanks were located. Pepper Industries was in the business of cleaning fuel oil tanks and boilers for the Navy, local industrial plants, and local hospitals. The lease was for five years. Pepper purchased a general liability insurance policy with a contractual liability endorsement from United States Fidelity & Guaranty. The policy took effect on February 19, 1980, and continued until February 2, 1984. Through a series of transactions the property was conveyed by Braswell Shipyards to Elliott Braswell and Jiles T. Lynch d/b/a Neckland Associates. This conveyance did not affect the lease.

In November of 1982 Pepper abandoned the premises. Neckland Associates reentered the premises and terminated the lease on March 18, 1983. As of the date of termination of the lease Pepper left the following materials on the property:

(1) Nine storage tanks filled with liquid chemicals ranging from 20,000 to 52,000 gallons per tank;

(2) Solid product chemicals of unknown origin, identified as corrosive;

(3) An assortment of reactive, unidentified bags of chemicals; and

(4) Assorted corrosive chemicals in bulk concentration, unprotected from the elements, some leaking from metal drums in which they were stored.

On May 14, 1983, corrosive chemicals left by Pepper ate through a valve on one of the storage tanks and 1000 gallons of chemicals spilled onto a field adjacent to the tank. On September 28, 1983, the South Carolina Department of Health and Environmental Control issued an administrative consent order requiring Pepper to cleanup the property. In June, 1984, DHEC filed a complaint against Pepper, Braswell Shipyards, and Neckland Associates to enforce the administrative order. The complaint sought a court order requiring the parties to submit and implement a plan to

cleanup the property within sixty days of the court order. The Environmental Protection Agency also issued an order in December of 1986 ordering Neckland Associates to perform response work to remove stored waste at the site.

Neckland Associates filed suit in the United States District Court for the District of South Carolina against Pepper. The District Court found Pepper liable to Neckland Associates in an action for damages resulting from Pepper's breach of the lease between it and Neckland Associates. The federal court awarded judgment against Pepper in the amount of $187,760.72. The damages were broken-down as follows:

(1) $1290.32 for nonpayment of rent;
(2) $6,643.72 for cleanup of the chemical spill; from one tank;
(3) $232.50 for chemical sampling;
(4) $4784.50 for chemical testing;
(5) $161,100 for disposal of 250,000 gallons of harzardous waste;
(6) $16,000 for tank cleaning and sludge disposal.

In February of 1986, Elliott Braswell commenced this action against Pepper, Phyllis Faircloth as administratrix of the Estate of Jiles T. Lynch, and USF & G seeking a declaratory judgment that the comprehensive general liability policy and contractual liability endorsement issued to Pepper by USF & G covered the damages awarded against Pepper in federal court. Pepper defaulted. USF & G defended on the ground the policy and endorsement did not provide coverage. The trial court ruled in favor of USF & G.

I.

The insurance policy contains several provisions relevant to the determination of this matter. As to the duty of USF & G to pay, the policy states "[the] Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies caused by an occurrence." The term "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage

neither expected nor intended from the standpoint of the insured." The term "property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period...."

Insurance policies are subject to general rules of contract construction. Policy language must be given its plain, ordinary, and popular meaning. In construing an insurance contract all of its provisions should be considered and an ambiguity may not be created by pointing out only a single sentence or clause. An insurance contract is ambiguous only when it may fairly be understood in more than one way, *Gambrell v. Travelers Ins. Co.*, 280 S. C. 69, 310 S. E. (2d) 814 (1983); *Universal Underwriters Ins. Co. v. Metropolitan Property and Life Ins. Co.*, 298 S. C. 404, 380 S. E. (2d) 858 (Ct. App. 1989).

The trial court found neither an "occurrence" or "property damage" under the facts of the case. We examine these issues separately.

## II.

The trial court found no "occurrence" as defined in the policy. As noted above, "occurrence" is defined in the policy as "an accident ... which results in property damage neither expected nor intended from the standpoint of the insured." The trial court concluded:

> There has been no "occurrence" as defined in the policy. It is clear Pepper Industries, Inc. knew and understood that removal of the hazardous waste from the abandoned lease premises was a requirement of the lease. Pepper Industries, Inc.'s deliberate failure to comply with the terms of the lease in failing to remove the hazardous waste can certainly not be interrupted [sic] as an "accident" which is "neither expected nor intended from the standpoint of the insured."

The trial court focused upon the breach of the lease by Pepper Industries. USF & G argues in support of the trial court's decision that breach of the lease is the proper focus and the appellants are seeking a ruling that intentional breach of a lease constitutes an "occurrence" under the policy. Braswell and Faircloth (collectively referred to as

Braswell) argue the proper focus is the chemical spill as the "occurrence" and not the breach of the lease or the failure to remove the hazardous materials. In essence, Braswell asserts that while Pepper may have committed an intentional act in breaching the lease the chemical spill was an event which resulted in property damage neither expected nor intended by the insured. Significantly, we find no argument by Braswell in his brief that absent the chemical spill USF & G would have a duty to pay a judgment against Pepper for the cost of removal of the hazardous waste. However, Braswell argues that once the spill happened and the government agencies mandated a cleanup, all the costs are covered under the policy including the cost to remove the stored chemicals which had not leaked.

We find the chemical spill was an "occurrence" as defined in the policy. The stipulated facts indicate the spill happened as the result of a valve rupturing and releasing liquid from the tank. The record indicates the rupture was a sudden event. There is nothing in the record to indicate the rupture was expected or intended by Pepper Industries as the insured under the policy. *General Ins. Co. of America v. Palmetto Bank*, 268 S. C. 355, 233 S. E. (2d) 699 (1977).

We, therefore, conclude the trial court erred in ruling there was no "occurrence" as defined in the policy. In our opinion, the chemical spill constituted such an "occurrence."

### III.

The trial court further held the damages claimed by Braswell did not constitute "property damage" as defined in the policy. The court stated Braswell's claim against Pepper Industries was restitutionary in nature because it was an attempt to restore the status quo. The court relied upon the decision of *Maryland Casualty Co. v. Armco Inc.*, 822 F. (2d) 1348 (4th Cir. 1987), to find no coverage under the policy.

The language of the policy outlines the contractual obligation of USF & G to pepper Industries. The policy states as follows:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as *damages* (emphasis added) because of . . .

*property damage* (emphasis added) to which this insurance applies caused by an *occurrence* (emphasis added).

By inserting the definition of "property damage" contained in the policy into the language of the coverage agreement it would read as follows:

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... [physical injury to destruction of tangible property which occurs during the policy period] to which this insurance applies caused by an occurrence.

Under this language we find the chemical spill caused some "property damage." The spilled chemicals caused physical injury to the land by contamination. This portion of the federal court judgment was separately stated to be $6643.72. However, the other elements of the federal court judgment do not relate to "property damage" as defined in the policy. Payment of past due rent is clearly not related. Sampling and the performance of chemical tests do not constitute "physical injury to or destruction of tangible property."

The major portion of the judgment constituted costs for removal of stored waste. These stored wastes had not leaked. Braswell admitted in oral argument this was not a case of long term leakage. Braswell has not established that the cost of removal of the stored waste is a sum Pepper Industries has become legally obligated to pay as damages because of physical injury to or destruction of tangible property caused by an occurrence. These removal costs are preventative in nature. No damages have yet occurred. We agree with the trial court that these costs are not covered under a general comprehensive liability policy. The trial court held Braswell's claim against Pepper was restitutionary in nature and was an attempt to restore the status quo. In its arguments Braswell emphasized the actions of the South Carolina Department of Health and Environmental Control in issuing an order compelling Pepper and Braswell to cleanup the site. The trial court noted this action and observed Braswell's claim against Pepper was "an attempt to restore the status quo or to recover restitution,

rather than an attempt to recover 'damages' as defined in the general liability policy."

In *Maryland Casualty Co. v. Armco Inc.*, 822 F. (2d) 1348 (4th Cir. 1987), the Fourth Circuit Court of Appeals held an insurer was not obligated to defend or indemnify its insured under a general comprehensive liability policy where the underlying action was a suit by the federal government to seek compliance with the directives of regulatory agencies. The Fourth Circuit relied upon this decision in *Cincinnati Insurance Co. v. Milliken and Company*, 857 F. (2d) 979 (4th Cir. 1988). In that case, the Fourth Circuit Court of Appeals affirmed a decision of the United States District Court for the District of South Carolina which held an insurer was not obligated to defend or indemnify its insured in a suit by the federal government to recover the response costs of removing hazardous wastes.

Braswell argues its action against Peppper is not a suit for restitution or equitable relief but it is a suit for damages for breach of contract. Call it what you may, the underlying issue is whether Pepper's insurer must indemnify under its policy for the costs incurred in complying with a government directive. As we view the record, these government directives concerned stored chemicals which had not yet caused physical injury to property. The presence alone of these chemicals does not constitute property damage. Under the authority of *Armco* and *Milliken and Company* we hold the costs of removal of the stored waste is not covered.

Upon the facts of this case we find an occurrence causing property damage did result but only as to the spill of the 1000 gallons of chemicals and only as to the $6643.72 in damages directly related to the contamination of the land by this spill. The other costs constituting the federal court judgment are not covered under the insurance policy. Our resolution of these matters does not require us to consider the numerous policy exclusions argued by the parties.

The decision of the circuit court is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

SHAW and BELL, JJ., concur.