1962

GREENVILLE COUNTY, Respondent v. The INSURANCE RESERVE
FUND, A DIVISION OF THE SOUTH CAROLINA BUDGET AND
CONTROL BOARD, An Agency of the State of South Carolina, Appel-
lant.

(427 S.E. (2d) 913)

Court of Appeals

*Charles E. Carpenter, Jr., William H. Hensel,* and *Deborah L. Harrison, of Richardson, Plowden, Grier & Howser,* Columbia, *for appellant.*

*Judith S. Burk, Greenville County Atty.,* Greenville, *for respondent.*

Heard Jan. 18, 1993; Decided March 1, 1993.

Reh. Den. April 1, 1993.

LITTLEJOHN, Acting Judge:

Appellant The Insurance Reserve Fund (Fund) appeals from an order granting summary judgment in favor of the Respondent Greenville County (County) and ordering it to defend certain lawsuits brought against the County. We reverse and remand.

The County was sued by ten area landowners on November 7, 1990 for inverse condemnation of land. The complaints alleged that the County operated a landfill in Simpsonville from the 1960s to 1972 at which hazardous chemicals were dumped. As a result of this dumping, the complainants allege a contamination of property which equals a taking of property without just compensation and damages therefrom. The complaints do not contain any allegations of when contamination began, was discovered, or that it was sudden and accidental. Although the complaints contain other causes of action against other entities, this is the only cause of action brought against the County.

Upon service of these complaints on the County, it tendered them to the Fund and requested defense of these suits under the County's Tort Liability Insurance policy (policy).[1] The Fund denied both a duty to defend and coverage of the claims. The County then brought this declaratory judgment action to determine the parties' rights and obligation under the policy in connection with the ten underlying suits. The Fund answered and counterclaimed requesting an order that it had no duty to defend or indemnify the tendered suits.

Upon cross motions for summary judgment, Judge Frank McGowan held that the Fund had a duty to defend on the ground of *res judicata*. He further found that the Tort Claims Act and the provisions of the policy indicated a possibility of coverage and also required the Fund to defend. He did not reach the issue of indemnification as the parties had stipulated on oral argument that this issue would be held in abeyance. The Fund appealed. We find that the Fund does not have a duty to defend the underlying ten suits and reverse the order of the lower court.

## I. *Res Judicata*

The lower court found the Fund to have a duty to defend the County on the ground of *res judicata*. The basis of this holding was a judgment obtained by the County in a declaratory judgment action in April 1990. That

---

[1] This policy was issued to the County under the provisions of S.C. Code Annotated § 15-78-140. The policy period was from January 1, 1989 to January 1, 1990.

action concerned the Fund's duty to defend litigation which was brought against the County in 1989 (1989 actions).

At that time, five other Greenville County property owners sued the County alleging inverse condemnation, breach of covenant and breach of contract. Four of the suits asserted the inverse condemnation was the result of the operation of the Putnam landfill after 1972 without a permit and dumping at the landfill of hazardous chemicals. This landfill was subsequently covered, houses were built on the property and wells were dug. In July and August 1989, the property owners were notified by federal and state authorities that their water was contaminated. They subsequently discovered the soil beneath and around their residences was also contaminated.

The fifth suit also alleged inverse condemnation because of contamination from a landfill located at Bessie Road and requested indemnification for liability which may result therefrom. The property which the landfill occupied had been leased from the complainant. The complainant refused to accept redelivery of the property because of the contamination and any resulting liability.

The County tendered the defense of the 1989 suits to the Fund which refused coverage. A declaratory judgment action was brought and the County moved for summary judgment as to the duty to defend. The court granted the County's motion finding a possibility of coverage of those suits under the policy but did not decide the Fund's duty to indemnify.

The County would have this Court find that because the parties in both declaratory judgment actions are the County and the Fund and because both actions concern the Fund's duty to defend under the policy, *res judicata* bars litigation of this matter. We disagree.

Generally, a final judgment in a prior suit acts as a bar to a subsequent action which involves the same claim, demand or cause of action. *Griggs v. Griggs,* 214 S.C. 177, 51 S.E. (2d) 622 (1949). A judgment is *res judicata* to a subsequent action only when rendered upon the merits, upon the same matters in issue and between the same parties. *Id.* 214 S.C. at 188, 51 S.E. (2d) at 627. Moreover, if the issue in the second action is one which might have been raised in the former suit, it too is barred. *Wold v. Funderburg,* 250 S.C. 205, 157 S.E. (2d) 180 (1967).

We recognize that the parties in both declaratory judgment actions are the County and the Fund. Moreover, the first action did adjudicate the issue of the Fund's duty to defend the 1989 actions with finality. However, we are not convinced that these two actions involve the same subject matter.

While the question is both actions is whether the Fund has a duty to defend, in each instance it was asked to defend different matters. This action concerns its duty to defend the ten underlying actions; the prior action imposed a duty to defend the 1989 actions. In determining the answer to both questions, the lower courts must have looked to the allegations in the underlying complaints.[2] *See South Carolina Medical Malpractice Liab. Ins. J.U.A. v. Ferry*, 291 S.C. 460, 463, 354 S.E. (2d) 378, 380 (1987) (the allegations of the complaint determine the insurer's duty to defend). Consequently, this Court must also look at these Complaints to completely ascertain the matters in issue.

We have reviewed these Complaints and find they are not identical. The underlying facts upon which the issues mut ultimately be determined are different. The matters in issue are dependent upon the underlying actions. We find *res judicata* to be inapplicable in this case.

## II. *Duty to Defend*

In *South Carolina Medical Malpractice Liab. Ins. J.U.A. v. Ferry*, the Supreme Court stated:

> An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured. However, these duties are interrelated. If the facts alleged in a complaint against an insured fail to bring a claim within the policy coverage, an insurer has no duty to defend. Accordingly, the allegations of the complaint determine the insurer's duty to defend.

291 S.C. at 463, 354 S.E. (2d) at 380 (citations omitted).

> Moreover, an insurer has no duty to defend an insured where the damage was caused by a reason unambiguously excluded under the policy coverage. *Engineered*

---

[2] The court in the first action recognized this and based its finding of a duty to defend on the policy, the Tort Claims Act, and the complaints.

*Products, Inc. v. Aetna Casualty & Sur. Co.*, 295 S.C. 375, 368 S.E. (2d) 674 (Ct. App. 1988).

The Fund asserts it does not have a duty to defend because there is not even a possibility of coverage under the policy. It contends that the complaints do not allege an occurence under the policy provisions or during the policy period; and even if an occurrence is alleged, the pollution exclusion clause takes these cases out of coverage. We do not address whether the facts of the complaint allege an occurrence under the policy because we find the pollution exclusion clause would preclude recovery in this instance.

Generally, insurance policies are subject to the general rules of contract construction. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E. (2d) 460 (1990). If a policy provision is ambiguous or capable of two reasonable interpretations, the construction most favorable to the insured will be adopted. *Quinn v. State Farm Mut. Auto. Ins. Co.*, 238 S.C. 301, 120 S.E. (2d) 15 (1961). However, if there is no ambiguity, the terms of an insurance policy must be interpreted and enforced according to their plain, ordinary and popular meaning. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 390 S.E. (2d) 471 (Ct. App. 1990); *Braswell v. Faircloth*, 300 S.C. 338, 387 S.E. (2d) 707 (Ct. App. 1989).

Ambiguity may not be created in an insurance contract by pointing out only a single sentence or clause. *Braswell*, 300 S.C. at 342, 387 S.E. (2d) at 709. Rather, an insurance contract is ambiguous only when it may fairly be understood in more than one way. *Id.* Moreover, courts may not torture the ordinary meaning of language of extend coverage expressly excluded by the terms of a policy. *McPherson v. Michigan Mut. Ins. Co.*, — S.C. —, 412 S.E. (2d) 445 (Ct. App. 1991), *aff'd as modified*, — S.C. —, 426 S.E. (2d) 770 (S.C. 1993).

The policy defines "occurrence" to mean:

an accident, including continuous or repeated exposure to conditions, which result in personal injury or property damage, neither expected nor intended from the standpoint of the insured.

9   The pollution exclusion clause of the policy states:

This insurance does not apply:

. . .

to personal injury or property damage arrising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritant, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such dispersal, release or escape is *sudden and accidental;* . . .
(Emphasis added.)

The interpretation of similar pollution exclusion clauses and their exceptions has caused some controversy. Particularly, the courts are split on their interpretation of the clause because of the definition of "sudden." Some jurisdictions have found the term "sudden" to be capable of more than one meaning, thus rendering the clause ambiguous and necessitating a construction of the exception against the drafting insurer. As a result, the courts equate "sudden" with the terms "unexpected and unintended" and deem damage from releases which are both gradual and abrupt covered by the policy's exception to the pollution exclusion. See *Claussen v. Aetna Casualty & Sur. Co.,* 259 Ga. 333, 380 S.E. (2d) 686 (Ga. 1989); *Kipin Indus., Inc. v. American Universal Ins. Co.,* 41 Ohio App. (3d) 228, 535 N.E. (2d) 334 (Ohio App. 1987); *Just v. Land Reclamation Ltd.,* 155 Wis. (2d) 737, 157 Wis. (2d) 507, 456 N.W. (2d) 570 (Wis. 1990).

However, other courts have reached the consensus that, in the context of the policy as a whole, "sudden" is unambiguous and must be given its plain, ordinary meaning. Consequently, "sudden" is defined in the temporal sense, and a release must be abrupt or precipitant, as well as accidental, for its damage to be covered by the policy. See *Goodman v. Aetna Casualty & Sur. Co.,* 412 Mass. 807, 593 N.E. (2d) 233 (Mass. 1992); *Borg-Warner Corp. v. Ins. Co. of North America,* 174 A.D. (2d) 24, 577 N.Y.S. (2d) 953 (N.Y. App. Div. 1992); *Waste Management of Carolina, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E. (2d) 374 (N.C. 1986); *Lower Paxon Township v. U.S. Fidelity & Guar. Co.,* 383 Pa. Super. 558, 577 A. (2d) 393

(Pa. Super. Ct. 1989); *Gridley Associates, Ltd. v. Transamerica Ins. Co.*, 828 P. (2d) 524 (Utah App. 1992).

We have analyzed the case law and the policy in this matter and we find that in the context of the policy as a whole, the word "sudden" is unambiguous and must be defined in its temporal sense. We do not believe the parties intended for it to mean unexpected and unintended because the inclusion of the definition of "occurrence" and of the word "accidental" in the exception to the exclusion covers events of that nature.

On the contrary, the word "sudden" was included in the policy to cover an event not yet defined by the policy, i.e. a release which was abrupt or precipitant. We find further support for this interpretation by the realization that if we were to otherwise define the word "sudden," the language of the occurrence provision, the pollution exclusion clause and its exception becomes unduly repetitious. See *Waste Management*, 340 S.E. (2d) at 381-82. Consequently, to satisfy the requirement of "sudden" in the exception of the pollution exclusion clause, the complaint must allege damage from a release that was abrupt and precipitant.

Upon examination of the 1990 complaints, we do not find any express or implied allegation that the contamination was the result of a sudden dispersal, escape or release. Instead, the complaints allege or release. Instead, the complaints allege a "regular dumping" of hazardous waste by certain manufacturers and a contamination therefrom. The only way pollution claims would be covered under this policy is if they are the result of a sudden and accidental release. Consequently, these allegations do not contain facts which would bring these claims within policy coverage. As there is no possibility of coverage under the policy, the Fund has no duty to defend the underlying suits. We accordingly reverse the order of the lower court and remand for entry of judgment consistent with this opinion.

Reversed and remanded.

CURETON and GOOLSBY, JJ., concur.