275 F.3d 384 (4th Cir. 2001)
 ELLETT BROTHERS, INCORPORATED, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY; FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INCORPORATED; ST. PAUL MERCURY INSURANCE COMPANY, Defendants-Appellees,
and
INTERNATIONAL INSURANCE COMPANY; RLI INSURANCE COMPANY; MOUNT HAWLEY INSURANCE COMPANY; UNITED NATIONAL INSURANCE COMPANY, Defendants.
AMERICAN INSURANCE ASSOCIATION; NATIONAL SHOOTING SPORTS FOUNDATION; NATIONAL ASSOCIATION OF INDEPENDENT INSURERS, Amici Curiae.
ELLETT BROTHERS, INCORPORATED, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY; FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INCORPORATED; ST. PAUL MERCURY INSURANCE COMPANY, Defendants-Appellants,
and
INTERNATIONAL INSURANCE COMPANY; RLI INSURANCE COMPANY; MOUNT HAWLEY INSURANCE COMPANY; UNITED NATIONAL INSURANCE COMPANY, Defendants.
AMERICAN INSURANCE ASSOCIATION; NATIONAL SHOOTING SPORTS FOUNDATION; NATIONAL ASSOCIATION OF INDEPENDENT INSURERS, Amici Curiae.
 Nos. 01-1130, 00-2533
 UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
 Argued: September 27, 2001
Decided: December 28, 2001
 
 Appeals from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-00-1269-3-19)COUNSEL ARGUED: Thornwell Forrest Sowell, III, SOWELL, GRAY, STEPP & LAFFITTE, L.L.C., Columbia, South Carolina, for Appellant. Walter J. Andrews, SHAW PITTMAN, McLean, Virginia, for Appellees. ON BRIEF: Robert H. Jordan, A. Burns Jones, SOWELL, GRAY, STEPP & LAFFITTE, L.L.C., Columbia, South Carolina, for Appellant. Lon A. Berk, Michael S. Levine, SHAW PITTMAN, McLean, Virginia; John E. Johnston, Jr., Laurel R.S. Blair, LEATHERWOOD, WALKER, TODD & MANN, P.C., Greenville, South Carolina, for Appellees. James C. Gray, Susan M. Glenn, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina; Mark R. Misiorowski, Richard Hodyl, Jr., WILLIAMS & MONTGOMERY & JOHN, LTD., Chicago, Illinois, for Amicus Curiae NAII.
 Before WILKINSON, Chief Judge, and LUTTIG and MICHAEL, Circuit Judges.
 Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Wilkinson joined. Judge Michael wrote an opinion concurring in part and concurring in the judgment.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Ellett Brothers, a handgun manufacturer, is a named defendant in four lawsuits. In three of these lawsuits, the plaintiffs are California municipalities who allege that Ellett's marketing of handguns creates public and private nuisances and violates the California Business and Professions Code. The municipalities request injunctive relief to abate the nuisances and to prevent violations of the Business and Professions Code, restitution to the public of funds obtained in violation of the Code, disgorgement of profits acquired by violating the Code, civil penalties for violating the Code, and costs of suit. One of these three complaints, brought by southern California municipalities, also requests attorneys' fees and "further relief as the Court deems equitable and just." J.A. at 474. The California municipalities do not seek compensatory or punitive damages.
 
 
 2
 In the fourth lawsuit, the NAACP alleges that Ellett created and maintained an illegal secondary market for guns. J.A. at 587-89. It seeks an injunction requiring Ellett to change its marketing practices, an injunction requiring Ellett to contribute to a fund to supervise gun dealers, attorneys' fees, and "further relief as this Court deems just and proper." J.A. at 594-96. The NAACP similarly does not seek compensatory or punitive damages.
 
 
 3
 Ellett's commercial general liability policy obligates its insurers to pay "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage'" and to defend Ellett "against any `suit' seeking those damages." J.A. at 190. Ellett seeks a declaratory judgment that its insurers must defend the above-referenced lawsuits and indemnify Ellett. The district court, concluding that the California municipalities and the NAACP seek only equitable relief, and not damages, against Ellett, granted summary judgment to the insurers on the duty to defend claim. J.A. 16364. The district court also allowed Ellett to dismiss voluntarily its indemnity claim against its insurers pursuant to Fed. R. Civ. P. 41. J.A. at 123.
 
 
 4
 For the reasons that follow, we affirm.
 
 I.
 
 5
 In appeal of the district court's summary judgment to Ellett's insurers, Ellett argues that the term "damages" is susceptible to more than one reasonable interpretation and that the district court therefore erred in construing the term as necessarily limited to claims for "legal" relief, as opposed to claims for either "legal" or "equitable" relief.
 
 
 6
 We have previously held that the term "damages" in an insurance contract unambiguously means legal damages, and that"[a]s a general rule comprehensive general liability policies do not extend coverage to claims for equitable relief." Cincinnati Ins. Co. v. Milliken and Co., 857 F.2d 979, 981 (4th Cir. 1988). See also Braswell v. Faircloth, 387 S.E.2d 707, 710-11 (S.C. Ct. App. 1989) (citing Milliken with approval). We may well have been without authority, in the context of the single contractual dispute at issue in Milliken, to so define the term "damages" for all contracts in futuro, as each contract is to be interpreted according to the intent of the parties. However, our authority therein to create a default rule of contract interpretation whereby, in the absence of any contrary intent by the parties, the term "damages" in insurance contracts will be interpreted so as not to reference equitable relief, would seem unassailable. And, here, that default rule of contract interpretation is sufficient to sustain the district court's summary judgment, because there is nothing in the contract between Ellett and its insurers that evidences an intention to include equitable, in addition to legal, claims for relief, among those as against which Ellett's insurers must defend.
 
 
 7
 Ellett makes much of the fact that "damages" is not defined in the policy, Appellant's Br. at 21-22, and that South Carolina insurance contracts are generally construed against the party that prepares them and liberally in favor of the insured. McCracken v. Government Employees Ins. Co., 325 S.E.2d 62 (1985). However, because neither the South Carolina courts nor the parties to this contract have evinced any intent to deviate from the default rule established in Milliken, we hold that the term "damages," as used in this contract, does mean legal damages only, and therefore does not extend to claims for equitable relief.
 
 II.
 
 8
 As to whether the four lawsuits against Ellett seek legal damages, as found by the district court, under South Carolina law a liability insurance company's obligation to defend its insured is determined by the allegations of the underlying complaint. See R.A. Earnhardt Textile Mach. Div., Inc. v. South Carolina Ins. Co., 282 S.E.2d 856, 857 (S.C. 1981). If the suit includes any cause of action covered by the policy, the insurer must defend, even if the suit joins other causes of action beyond the policy's scope. See Town of Duncan v. State Budget & Control Board, 482 S.E.2d 768, 774 (S.C. 1997).
 
 
 9
 We have no difficulty concluding that none of the complaints seeks "damages" against Ellett. Neither the California municipalities nor the NAACP seek compensation for past injuries. Although they seek money from Ellett in the form of restitution, disgorgement, civil penalties, attorney's fees, cost of suit, and (in the NAACP suit) contribution to a fund to monitor gun dealers, none of these constitutes "damages." Restitution and disgorgement require payment of the defendant's ill-gotten gain, not compensation of the plaintiff's loss. This court has described restitution as an "equitable remedy." See Milliken, 857 F.2d at 980. And civil penalties, likewise, are not "damages" payable to the victim, but fines or assessments payable to the government. The NAACP's proposed fund to monitor gun dealers is forward-looking, prospective relief --not compensation for past injuries inflicted.
 
 
 10
 The contract itself distinguishes costs and attorneys' fees from "damages," by obligating the insurers to pay these amounts only if the insurer was required to defend the suit in the first place. J.A. 551. The same is true for pre-judgment and post-judgment interest. Id. These cannot be included within the meaning of "damages" in this contract.
 
 
 11
 Finally, although two of the complaints request "such further relief as this court deems just," such language does not invoke the insurer's duty to defend. Under South Carolina law, the facts of the complaint must allege that Ellett owes legal damages, Earnhardt, 282 S.E.2d at 857, and no such facts are alleged here. A prayer for "such further relief" is not a factual allegation supporting a claim for legal damages.
 
 III.
 
 12
 The district court also granted Ellett's motion to dismiss without prejudice its indemnity claim against its insurers, holding that the claim was not ripe and that Ellett could be irreparably harmed with respect to the underlying suits. J.A. at 123. The insurers cross-appeal, arguing that this was error and that they were entitled to summary judgment on the indemnity claim.
 
 
 13
 A plaintiff's motion to voluntarily dismiss a claim should not be denied absent plain legal prejudice to the defendant, see Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). A district court's decision to grant such a motion is reviewed for abuse of discretion, see Davis v. USX Corp., 819 F.2d 1270 (4th Cir. 1987). We hold that the district court did not abuse its discretion in dismissing Ellett's indemnification claim without prejudice. First, under South Carolina law, while the duty to defend is based on the allegations in the complaint, see Earnhardt, 282 S.E.2d at 857, the duty to indemnify is based on evidence found by the factfinder, see Jourdan v. Boggs/Vaughn Contracting, Inc., 476 S.E.2d 708, 711 (S.C. Ct. App. 1986). Because no findings of fact have been made in the four lawsuits against Ellett, the indemnity claim is not ripe and the district court correctly dismissed it. Moreover, the insurers will not be irreparably harmed by granting Ellett's motion to voluntarily dismiss its indemnity complaint, as the prospect of a subsequent lawsuit does not constitute prejudice for purposes of Rule 41(a)(2). See Davis, 819 F.2d at 1274.
 
 
 14
 For the reasons given, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 15
 MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:
 
 
 16
 I concur in the judgment and in part III of the majority's opinion. The majority, relying on our 1988 decision in Cincinnati Ins. Co. v. Milliken & Co., 857 F.2d 979 (4th Cir. 1988), interprets South Carolina law to mean that the term "damages" in an insurance contract generally refers to legal damages and not to equitable relief. South Carolina law, however, has not remained static since 1988, and it now appears that "damages" can include equitable relief in some instances. At the very least, the question is unsettled. I therefore respectfully decline to join parts I and II of the majority's opinion. Regardless of the state of South Carolina law on the legal/equitable distinction, contract terms are nevertheless limited to their ordinary, plain meaning. Here, the underlying lawsuits do not seek "damages" in the plain sense of the word: they do not seek compensation for past injuries. Accordingly, I vote to affirm the judgment.
 
 I.
 
 17
 The majority cites Braswell v. Faircloth, 387 S.E.2d 707 (S.C. Ct. App. 1989), as an indication that the legal/equitable distinction in Milliken has been reaffirmed by the South Carolina courts. Braswell does cite Milliken with approval, but not for the proposition that "damages" means legal damages. Indeed, the ultimate holding in Braswell appears to conflict with Milliken's legal/equitable distinction. To the extent that South Carolina case law deviates from or contradicts our holding in Milliken, we must defer to the courts of South Carolina. See Gooding v. Wilson, 405 U.S. 518, 526 n.3 (1972).
 
 
 18
 In Braswell the South Carolina Court of Appeals was presented with an action by the lessor of property who sought a declaration that his former lessee's insurance policy covered costs for the removal of stored chemicals from the property and costs for a governmentordered cleanup of a chemical spill on the property. Braswell, 387 S.E.2d at 708-09. The insurance contract in Braswell, like the contract here, limited coverage to lawsuits seeking "damages" resulting from "property damage" and did not define the term "damages." Id. at 709. The trial court had dismissed all of the lessor's claims as falling outside the definition of "property damage." Id. at 710. In addition, the trial court had held that the lessor's lawsuit "was restitutionary in nature because it was an attempt to restore the status quo," and therefore the suit sought only equitable relief, which did not count as a suit seeking "damages." Id.
 
 
 19
 On appeal the lessor in Braswell sought to distinguish Milliken by arguing that his action was "not a suit for restitution or equitable relief but . . . a suit for damages for breach of contract." Id. at 711. The South Carolina Court of Appeals brushed aside the question of whether the suit was legal or equitable, saying,"[c]all it what you may, the underlying issue is whether [the lessee's] insurer must indemnify under its policy for the costs incurred in complying with a government directive." Id. The court resolved this coverage issue by looking at whether the suit sought costs associated with remediating past or future injuries. As to stored chemicals that had "not yet caused physical injury to property," the court held: "under the authority of [Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348 (4th Cir. 1987),] and Milliken and Company . . . the costs of removal of the stored waste is [sic] not covered." Id. As to the costs of the governmentordered cleanup of the chemical spill, the court held that "an occurrence causing property damage did result . . . as to the . . . damages directly related to the contamination of the land by [the] spill [of the 1000 gallons of chemicals]." Id. The South Carolina Court of Appeals reversed the trial court on this one issue, concluding that the costs associated with cleanup of the chemical spill were covered under the insurance policy. Id. While the court did not say so explicitly, it necessarily determined that these costs constituted "damages" as that term was used in the policy. Cf. Hazen Paper Co. v. USF&G;, 555 N.E.2d 576, 582-83 (Mass. 1990) (holding that costs for removal of 115 drums of hazardous materials were not covered because no damage had occurred, but that costs for a government-ordered cleanup of spilled hazardous materials were "damages" and therefore covered).
 
 
 20
 Thus, Braswell cites Milliken approvingly for the idea that "future response costs" do not constitute "damages" because no physical injury has yet occurred. Compare Braswell, 387 S.E.2d at 711, with Milliken, 857 F.2d at 980. Nevertheless, Braswell in effect rejects Milliken's categorical rule excluding equitable relief from the term "damages" because Braswell awarded coverage for environmental cleanup costs that the trial court had categorized as equitable relief. See Nancy W. Monts, Insurance Coverage for Superfund Claims: Are Response Costs Recoverable Damages?, 41 S.C. L. Rev. 871, 878-79 (1990) (noting that the holding in Braswell implicitly contradicts Milliken's legal/equitable distinction).
 
 
 21
 Neither the South Carolina Supreme Court nor its Court of Appeals has fully addressed whether "damages" can include equitable relief in the insurance context. In this case, the result is the same whether we interpret the term "damages" to mean only "legal damages" or simply to mean compensation for past injury. The interpretation chosen, however, can make a difference in other contexts. For example, the question of whether the term "damages" in an insurance contract encompasses equitable environmental cleanup costs is an intensely disputed area of state contract and insurance law. See, e.g., Braswell, 387 S.E.2d 707; Boeing Co. v. AETNA Cas. & Sur. Co., 784 P.2d 507, 515 (Wa. 1990) (rejecting a federal court's prior interpretation of Washington law and stating, "we agree with the majority of cases across the country that the plain meaning of damages does not distinguish between sums awarded on a `legal' or `equitable' basis and that the plain meaning of damages may include cleanup costs to the extent that these costs are incurred because of property damage."); Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505 (Mo. 1997); Bausch & Lomb Inc. v. Utica Mut. Ins. Co., 625 A.2d 1021 (Md. 1993). Because this case may be resolved on an alternate and wellestablished ground, I would not apply our rule in Milliken, which appears to be in conflict with the result in Braswell.
 
 II.
 
 22
 The legal/equitable distinction aside, the lawsuits underlying this case still do not seek "damages" as that term is commonly understood. South Carolina law provides that a term in an insurance contract, as in contracts generally, should not be expanded beyond "its plain, ordinary and popular meaning." State Farm Fire & Cas. Co. v. Breazell, 478 S.E.2d 831, 832 (S.C. 1996). The term "damages" is ordinarily meant to include "the estimated reparation in money for detriment or injury sustained." Webster's Third New Int'l Dictionary of the English Language 571 (1989); see also Farmland Industries, 941 S.W.2d at 508; Bausch & Lomb, 625 A.2d at 1032 (rejecting this court's statement of Maryland law in Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348 (4th Cir. 1987)).
 
 
 23
 Here, the underlying lawsuits seek an injunction to abate a nuisance, restitution, disgorgement of profits, civil penalties, attorneys' fees, costs, and contribution to a fund to monitor gun dealers. None of these remedies would repair or compensate for injuries sustained in the past by victims of gun violence. An injunction to abate a nuisance, specifically, one requiring changes in the methods of distributing and marketing firearms, is forward looking relief to prevent future harm, not relief to redress past harm. Likewise, monies for a fund to monitor gun dealers are not costs of past injuries, nor are attorneys' fees and court costs. Civil penalties are fines payable to the government to punish and deter bad conduct, not payments of the costs of an injury or harm. In some cases, equitable relief in the form of restitution or disgorgement is used to restore damaged property or goods, as in the case of environmental cleanup, and thus the relief may fall within the ordinary meaning of "damages." See Bausch & Lomb, 625 A.2d at 1032-33 (environmental cleanup costs required by the government's restitutionary claims fall within the common usage of "damages"). Here, however, the gun makers' and distributors' revenue that would be subject to restitution and disgorgement would be paid into public treasuries. There is no indication that the funds would be paid to the victims of gun violence. Therefore, the restitution and disgorgement is not sought to compensate for or repair past injuries. All in all, because the underlying lawsuits do not seek "damages" in the ordinary sense, I concur in the judgment affirming the award of summary judgment to the defendant-insurers on the duty to defend claim.