THE TRAVELERS PROTECTIVE ASSOCIATION *v.* SHERRY.

4-4314

Opinion delivered May 18, 1936.

*Owens & Ehrman* and *E. L. McHaney, Jr.*, for appellant.

*Vick & Sluyter* and *June P. Wooten*, for appellee.

BUTLER, J. The appeal in this case challenges the verdict and judgment of the court below for several reasons. It will be necessary, however, to notice only one; that is, the contention made that the verdict is not supported by sufficient legal evidence.

The action is based upon an accident policy issued by the appellant to appellee's husband who was killed in an automobile accident on January 27, 1935. On January 30, following, the insured's son, acting as agent for Mrs. Julia Sherry, the beneficiary, notified the local agent of appellant company of the death of his father and made inquiries concerning the status of the accident policy. He was informed that there was no liability for the death of the insured because of failure to pay the semiannual premium due and payable on December 31, 1934. At that time the son informed the agent that the insured had received an accidental injury on the evening of December 31, 1934, at about 10:30 p. m., which had totally disabled the insured for a time and partially disabled

him for an additional period, and requested that $7.50 of the benefits for this disability be applied to the payment of the past-due premium. When this information was received by the agent, he furnished blanks for making proof of claim and notified the association by letter at its home office informing it that the insured had been killed in an automobile accident subsequent to the injury in December preceding. Upon receipt of proof of injury appellant paid for the total and partial disability claim without investigation in the sum of $57.15. This payment was made by check which was indorsed and collected by Mrs. Sherry. Thereafter, in March, 1935, a claim was made for death benefits in the sum of $2,500, which the association refused to recognize and the suit followed resulting in a verdict and judgment in favor of appellee.

The position was taken by the appellee, and is now contended for, that while it is true that the insured failed to make the semiannual premium payment of $7.50 due on December 31, 1934, yet, because of the injury received by the insured on that date from which disability followed, the appellant owed the insured a sufficient amount to pay the premium and that the appellant's duty was to apply a sufficient amount of this indebtedness to the payment of the premium so as to avoid a forfeiture of the policy. This contention must be determined by the applicable provisions of the policy and by-laws.

The insured was a Class "A" member of the association and entitled, so long as the policy was in force, to receive a certain amount of weekly benefits for accidental injury resulting in total or partial disability, and also, in case of death from accidental injuries, in the sum sued for. The dues or premiums were payable annually in advance on December 31 of each year, or in semiannual installments, if preferred, on December 31 and June 30 without notice. No grace period was provided in which the policy should remain effective after the maturity date of the premium, but any member might be reinstated, if, within forty-eight days after default, the premium was paid. He was not, however, entitled to receive benefits for any injury between the date of default and the tender

and acceptance of the past-due premium. It was further provided that after the forty-eight days had elapsed the member could be restored only by making formal application in the manner provided for new members. There was the further provision that the board of directors of the association might cancel any membership if deemed advisable whenever the risk, in the opinion of the board, became more hazardous than when first assumed, "or, for any other reason which at the discretion and in the opinion of the board of directors makes such cancellation advisable;" and "* * * that the board of directors shall have the power at any dues-paying period to refuse to renew the membership of any member and decline to accept his dues when the member's duties or physical condition in the discretion and in the opinion of the board of directors warrants such action."

The accident suffered by the insured which resulted in his total disability occurred at 10:30 p. m. on the 31st of December, 1934. The notice was given certainly not earlier than January 30, following, and proof was made on February 6, following. According to the certificate of the physician which was accepted by appellant the insured was totally disabled for approximately a week and partially disabled thereafter until January 26, and claim was made for these disabilities in the sums of $21.43, total disability for six days, and $35.72, partial disability for two weeks and six days. These amounts were allowed and paid to the appellee. If it be conceded that something was due the insured on December 31, 1934, for the injury he suffered at 10:30 p. m. on that date, it could not have been for a period of more than one and a half hours before midnight of that day and would have been insufficient to cover the semiannual premium due of $7.50, and to prevent suspension of the benefits under the policy.

The cases referred to by counsel for appellee where it is held that the lapse of a policy was prevented were those where the insurer had in its hands at or before the lapse of the policy sufficient funds to keep the same in force until the death or disability of the insured. Typical of these is the case of *American National Insurance*

*Company* v. *Mooney,* 111 Ark. 514, 164 S. W. 276. In this case the insured died and liability was denied on the ground that he had failed to pay the premium and the policy had lapsed. In addition to the death benefit, however, there were sick benefits provided by the policy. The contention was made by the beneficiary that at the time of the alleged lapse the insurance company owed the insured sick benefits sufficient to carry the policy beyond the date of his death. The court there announced the following to be the rule: "If, however, as plaintiff contended, a sum of money was due, sufficient to pay the premiums and keep the policies alive up to the death of Weatherall, then there was no forfeiture of the policies, for the reason that the amount due should have been applied by the company in satisfaction of the premiums, so as to keep the policies alive."

This rule has no application to the instant case for the reason that there was nothing due the insured by the association until after the policy had lapsed or became suspended. Furthermore, under the provisions of the by-laws which have been set forth, no absolute duty rested upon the association to reinstate the policy where payment was tendered after the due date, but such reinstatement was discretionary with the board of directors.

The appellee strongly relies upon the case of *Order of Ry. Conductors of America* v. *Skinner,* 190 Ark. 116, 77 S. W. (2d) 793, where it was held that payment of a premium after the expiration of the grace period named in the contract was sufficient to keep the policy in force. This conclusion rested upon the fact shown that repeated acceptance of premiums beyond the grace period waived that provision of the contract, where no demand was made by the insurer that the insured should comply with the provisions of the contract. In the case at bar, however, there was no waiver. The most the evidence shows is that on a number of occasions the premiums were not paid on their due dates, but they were all made within the forty-eight days allowed by the contract in which payment might be made and these payments served to reinstate the insurance. The only effect of the non-payment of the premium on the due date was to suspend

the obligation of the contract, but, if a loss was sustained during its suspension, the insurance could not be recovered. 3 Couch Cyc. Ins. Law, 2023.

In all contracts of insurance of dubious or doubtful meaning the construction should be placed upon them most favorable to the insured, but where the provisions are unambiguous they must be construed according to their plain meaning. We find no ambiguity in the contract relating to the payment of premiums after their due date. The forty-eight days in which these payments might be made are clearly not days of grace, as in the ordinary policy, the effect of which is to extend the liability of the insurer throughout those days, but it is plain that during the time the premiums remain unpaid, the insurance is not in force.

It follows from the views expressed that the trial court erred in refusing to direct a verdict for the appellant. The judgment is therefore reversed, and as the cause seems to have been fully developed, the case is dismissed.