# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————

No. 00-2068

————————

| | |
|---|---|
| Arkansas Power and Light Company, et al., | * <br> * <br> * |
| Plaintiffs - Appellants, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Western District of Arkansas. |
| Hartford Steam Boiler Inspection and Insurance Company, | * <br> * <br> * |
| Defendant - Appellee. | * |

————————

Submitted:  February 15, 2001

Filed:  July 23, 2001

————————

Before BOWMAN and LOKEN, Circuit Judges, and STROM,* District Judge.

————————

LOKEN, Circuit Judge.

Arkansas Power and Light Company ("Arkansas Power") suffered a catastrophic loss to one of the units at its steam generating plant near Newark, Arkansas, resulting in property damage and expediting expenses of $28,182,561.14.  At the time, Arkansas Power had in place boiler and machinery insurance provided by Hartford Steam Boiler

————————

*The HONORABLE LYLE E. STROM, United States District Judge for the District of Nebraska, sitting by designation.

Inspection and Insurance Company ("Hartford"), and all-risk property insurance provided by six property insurers. After preliminary investigations of the loss, Hartford took the position that the loss was proximately caused by a furnace explosion or an explosion of unconsumed fuel, risks covered by the all-risk policies but excluded under Hartford's policy. The all-risk carriers took the position that the loss was caused by a mechanical breakdown of a fired vessel and excursion of steam into other components of the unit, a risk covered solely by Hartford. Faced with this coverage dispute, Arkansas Power invoked the loss adjustment endorsements in the various policies.

A loss adjustment endorsement, also referred to as a joint loss agreement, provides a means for an insured to receive prompt payment when two or more insurers with potentially overlapping coverages disagree as to the cause of a loss. Under these endorsements, after the insurers agree on the total amount of the loss, each pays any portion that it agrees is covered solely under its own policy, plus one-half of the remaining amount in dispute. With the insured fully paid, the insurers then arbitrate their coverage dispute. See WEBB, COMMERCIAL INSURANCE 150 (3d ed. 1996). In this case, however, the insured was left unsatisfied because, in determining the amount to be paid under the loss adjustment endorsements, the insurers applied the $5,000,000 deductible in the all-risk policies, rather than the $250,000 deductible in Hartford's boiler and machinery policy. Arkansas Power filed this action against Hartford to recover the difference in deductibles. The district court[1] concluded that the $5,000,000 deductible applies and granted Hartford's summary judgment motion. Arkansas Power appeals. We affirm.

As framed by the parties, the dispute between Arkansas Power and Hartford turns on the proper construction and application of Endorsement 11 and Endorsement

---

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

12 in the Hartford policy. Endorsement 11 is entitled Joint Loss Deductible and provides in relevant part:

> In the event of there being a <u>combined loss</u>, being a loss which is covered by both this policy and the fire policy, then the highest applicable deductible only will be utilized.

Endorsement 12 is Hartford's Loss Adjustment Endorsement, which is mirrored in the all-risk policies. It provides in relevant part:

> In the event of damage to or destruction of property . . . and there is a disagreement between the insurers with respect to
>
> (1) whether such damage or destruction was caused by an accident insured against by this policy or by a peril insured against by such fire insurance policy(ies) . . .
>
> This company shall, upon written request of the insured, pay to the insured one-half of the amount of the loss which is in disagreement, but in no event more than this company would have paid if there had been no fire insurance policy(ies) in effect, subject to the following conditions:
>
> (1) The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the insured and the insurers, is limited to the minimum amount remaining payable under either the boiler and machinery or fire policy(ies) . . . .

After Arkansas Power invoked Endorsement 12 and the comparable loss adjustment endorsements in the all-risk policies, Hartford and the all-risk insurers adjusted the loss under these endorsements. Disregarding the treatment of expediting expenses, which are not at issue on appeal, the insurers agreed that the total amount of

the insured loss was $26,813,961.18, well within the policy limits of the Hartford policy and the all-risk policies. They also agreed that $948,102.27 of the loss was covered only by the all-risk carriers (for costs of freeze protection and of water damage from firefighting efforts), and that $1012.80 was covered only by Hartford. They then subtracted the $5,000,000 deductible in the all-risk policies and divided the remaining amount in dispute equally between them, resulting in total payments of $10,433,435.86 by Hartford and $11,380,525.33 by the all-risk carriers. Arkansas Power sued Hartford for the $4,750,000 difference in deductibles.

In resolving Hartford's motion for partial summary judgment on this issue, the district court focused first on whether the loss in question was a "combined loss" for purposes of Endorsement 11 because it arose from different causes that were covered separately under the policies, and because it was capable of separation and apportionment among the carriers. The loss was capable of separation and apportionment, the court concluded, because $948,102.27 was covered only by the all-risk policies. Because Endorsement 11 applies, the court further concluded that its plain language requires that the higher $5,000,000 deductible be used in adjusting the total loss, even though arbitration pursuant to Endorsement 12 will be required to finally apportion the disputed coverages between Hartford and the all-risk carriers. Arkansas Power argues that the district court erred in applying Endorsement 11 instead of Endorsement 12. Under Arkansas law, construction of an unambiguous insurance policy is a question of law for the court. See Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc., 962 S.W.2d 735, 740 (Ark. 1998). We review the district court's construction of the Hartford policy *de novo*. See St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996) (standard of review).

As we understand its argument, Arkansas Power contends on appeal: (i) a "combined loss" for purposes of Endorsement 11 must be caused by separable and discrete causes that can be apportioned between Hartford and the all-risk insurers; (ii)

Hartford failed to prove for summary judgment purposes that this loss was caused by separable and discrete causes, indeed, Hartford denied any coverage during the adjustment process; (iii) Hartford failed to prove the loss can be apportioned among the insurers; (iv) therefore, this was a "joint loss" subject to the "additional coverage" of Endorsement 12, not a "combined loss" subject to Endorsement 11; and (v) a joint loss is subject to the *lower* applicable deductible.

The fatal flaw in this argument lies in the assumption underlying point (v) -- that a "joint loss," as Arkansas Power defines it, is subject to the lower deductible. As support for that assertion, Arkansas Power cites only an article by an insurance underwriter in a publication entitled "Best's Underwriting Newsletter" in which the author in turn cites a source called *Guiding Principles for Overlapping Insurance Coverages*. The *Guiding Principles* may well be used by insurance companies in resolving issues of overlapping coverage. But the *Guiding Principles* do not override specific policy provisions, and here Endorsement 12, on which Arkansas Power relies, speaks clearly to the contrary. Condition 1 to Endorsement 12 limits Hartford's liability under the Loss Adjustment Endorsement to one-half of "the minimum amount remaining payable under either the boiler and machinery or fire policy(ies)." This limitation avoids a windfall to the insured in the event subsequent arbitration assigns all liability for the loss to the carrier with the smaller exposure. Thus, by invoking the Loss Adjustment Endorsement, the insured agrees to accept the parameters of the policy with the smaller scope of coverage in exchange for receiving payment quickly rather than waiting for the carriers to resolve their coverage dispute.

The minimum amount remaining payable under overlapping policies may be affected by three variables -- the total loss and the portion of the loss that either insurer agrees is its sole liability; policy limits in each policy; and the policy deductibles. In this case, the policy limits do not come into play because they well exceed the minimum amount remaining payable by either carrier, after taking into account the undisputed amounts paid by each. But the difference in deductibles does affect the

amount remaining payable. With a $5,000,000 deductible, the amount remaining payable for the all-risk carriers was approximately $23,000,000. With a $250,000 deductible, the amount remaining payable for Hartford was over $27,000,000. Therefore, under the plain language of Endorsement 12, the "*minimum* amount remaining payable" was the amount determined using the $5,000,000 deductible.

For this reason, we conclude that the plain language of Endorsement 12 provides that the amount paid by Hartford under that endorsement is determined by applying the $5,000,000 deductible in the all-risk policies. Accord Arcadian Corp. v. Olin Corp., 698 So. 2d 9, 11 (La. App. 1997) ("In calculating the amount to be paid [under a loss adjustment endorsement], the amount in dispute is reduced by the highest deductible contained in any of the policies."). Arkansas Power concedes that the $5,000,000 deductible applies if Endorsement 11 is controlling, as the district court concluded. Thus, no matter which endorsement governs, the judgment of the district court must be affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-