Paul E, Danielson, Justice, dissenting. |iaI dissent. The primary problem with the majority’s decision is that it exceeds the bounds of the authority granted to this court under section 2(D)(3) of amendment 80 to the Arkansas Constitution and Arkansas Supreme Court Rule 6-8 (2015). In accordance with those authorities, the United States District Court for the Eastern District of Arkansas, Western Division, certified to this court two questions of Arkansas law that may be determinative of a cause now pending in the certifying court on the’basis that it appeared to the certifying court that there is no controlling precedent in our decisions. See Ark. Sup.Ct, R. 6 — S(a)(i). We accepted certification of the questions. See Columbia Ins. Grp., Inc. v. Cenark Project Mgmt. Servs., Inc., 2015 Ark. 396, 2015 WL 6560626 (per curiam). Now, the majority refuses to answer the questions. Instead, it proceeds to answer a question that was not asked of us and is not before us, I cannot overlook this fundamental flaw in the majority’s decision. The questions certified to us are as follows: (1) Whether faulty workmanship resulting in property damage to the work or work product of a third party (as opposed to the work or work product of the insured) constitutes an “occurrence”; and (2) If such faulty workmanship constitutes an “occurrence,” and an action is brought in contract for property damage to the work or work product of a third person, does any exclusion in the policy bar coverage for this property damage? Id. at, 1-2. Rather than answer these questions, the majority poses and answers a question of its own choosing: whether a commercial general liability insurance policy (“CGL policy”), specifically the one involved in this case, provides coverage for the claims asserted by the homeowners in this case. Perhaps what is most striking about the majority’s .decision is that the federal court already answered this question. In a separate order entered the same [ 14day as the. certification order, the federal court granted the summary-judgment motion of respondents Arkansas Infrastructure, Inc., and David Barron “to the extent that Columbia has a duty to defend them.” As the federal court noted, the duty to defend arises when'there is a possibility that coverage exists. See, e.g., Home Indem. Co. v. City of Marianna, 291 Ark. 610, 727 S.W.2d 375 (1987). The federal court specifically rejected the argument “that there is no coverage for a breach of contract action.” There is nothing in the insuring agreement phrase “legally obligated to pay as damages” that restricts the liability for which damages may be awarded to tort claims. As long as the damages sought fit within, the Policy’s definition of “property damage” caused by an “occurrence,” there is an initial grant of coverage. The Court finds that under the common and ordinary meaning of the Policy’s language, the complaint alleges facts which would possibly come within the coverage of the Policy. Whether this ruling was correct is not for us to decide. Simply put, this is not an appeal. We have no authority to review the federal court’s orders. As we have stated, “[a] Rule 6-8 matter is an' original action involving questions of law only.” Longview Prod. Co. v. Dubberly, 352 Ark. 207, 211, 99 S.W.3d 427, 429 (2003) (per curiam). “Our inquiry is limited solely to the certified question.” McMillan v. Live Nation Entm’t, Inc., 2012 Ark. 166, at 3, 401 S.W.3d 473, 475. Even if we had the authority to expand the scope of our inquiry beyond the certified questions, we do not have a complete record to review. This case is ongoing in the federal court, and when we accepted certification of the questions, we directed the parties to provide us with any pleadings that would be useful to our understanding of the legal issues presented. Columbia Ins. Grp., Inc., 2015 Ark. 396. To delve into other issues, when we have neither the authority nor the record to do so, is a mistake. I isThis mistake is not' cured by the majority’s assertion that the certified questions are moot and that, answering them would constitute an improper advisory opinion. On the contrary, 'The weight of authority holds that -a high court’s answer to a certified question is not an improper advisory opinion so long as (i) a court addresses only issues that are truly contested by the parties and are presented on a factual record; and (ii) the court’s opinion on the certified question will be dispositive of the issue, and res judicata between the parties. Longview Prod. Co., 352 Ark. at 209, 99 S.W.3d at 428-29 (quoting Los Angeles All. for Survival v. City of Los Angeles, 22 Cal.4th 352, 93 Cal.Rptr.2d 1, 993 P.2d 334, 339 (2000)) (emphasis in original). The majority’s opinion as written will not be dispositive of the issue or res judicata between the parties because it purports to answer a question that is not ours to answer. Moreover, even assuming it would be a proper undertaking to determine whether the CGL policy extends coverage for the homeowners’, claims, I disagree with the majority’s analysis on that issue. In short, the majority overstates our holding in Unigard Security Insurance Co. v. Murphy Oil USA, Inc., 331 Ark. 211, 962 S.W.2d 735 (1998). Contrary to the majority’s assertion, Unigard does not stand for the proposition that a CGL policy can never extend coverage for a claim of breach of contract. Such a proposition would be untenable given the fact that the CGL policy at issue in that case, like the one at issue here, did'not define coverage with reference to any specific cause of action.. In Unigard,. this court looked, to the jury instructions given in the underlying, case and- to the jury’s answers to interrogatories and on that basis concluded that the jury “made the award for compensatory damages ‘on account of or ‘because of Murphy Oil’s breach of its lease, not on account of any property damage that re-suited from Murphy Oil’s operations on the island.” Id. at 222, 962 S.W.2d at 740. Therefore, if we had been called upon to answer the coverage question in the instant case, we would need to look beyond mere labels. A careful reading of the homeowners’ complaint reveals that they sought compensation for damage to their property caused by faulty workmanship. Specifically, although they made reference to the respondents’ failure to perform their work in accordance with certain plans, specifications, and drawings, they also alleged that “the foundation pads, drainage systems, buttresses and gabion walls had not been constructed correctly”; that “the foundation pads, drainage systems, buttresses and gabion walls ... are faulty, and are moving and shifting, causing damage to the homes and other structures built upon them”; and that, as a result of the faulty workmanship, “hydrostatic pressure has developed and continues to develop from groundwater collecting under the foundations of the houses and other structures constructed by plaintiffs on their respective lots, causing shifts in the soils and structure foundations, and endangering the integrity of such structures.” The homeowners alleged that they had sustained damages not only in the loss of the contract price, but also in the cost of work required to “repair, replace or remediate the faulty work done by All, and to prevent future' movement of the foundation pads, buttresses, gabion walls and structures constructed upon them,” as well as “permanent loss of value of their respective properties and the structures constructed on them.” Considering these allegations, this case is unlike Unigard. Here, the insured’s potential liability arose from conduct that injured or damaged property. Accordingly, I disagree with the majority’s holding that coverage does not exist. 117Turning to the questions that were actually certified to us, I would answer the first in the affirmative. Columbia argues that the homeowners’ alleged damages were not the result of accidental conduct on the part of the insured and thus were not caused by an “occurrence,” as that term is defined in the CGL policy. In making this argument, Columbia relies exclusively on our decision in Essex Insurance Co. v. Holder, 370 Ark. 465, 261 S.W.3d 456 (2008). There, we held that “defective workmanship standing alone— resulting in damages only to the work product itself — is not an occurrence under a CGL policy.” Id. at 540, 261 S.W.3d at 460. However, as this very language makes clear, we expressly limited our holding in Holder to claims involving damages to the work product of the insured. Property damage to the work product of a third party is not similarly foreseeable. As the Eighth Circuit has explained, Holder provides for the denial of coverage for damage to the insured’s work product itself; however, absent some applicable exclusion in the policy or other defense, an insurer is obligated to provide coverage for all property damage other than to the insured’s work product. Lexicon, Inc. v. ACE Am. Ins. Co., 634 F.3d 423 (8th Cir.2010). “Under Arkansas law, it was foreseeable that faulty subcontractor work would damage the [insured’s work product], but not foreseeable that faulty subcontractor work would cause millions of dollars in collateral damage.” Id. at 427. See also Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F.Supp.2d 917 (E.D.Ark.2005). Accordingly, I would hold that faulty workmanship resulting in property damage to |isthe work or work product of a third party (as opposed to the work or work product of the insured) constitutes an “occurrence.”[1] I would answer the second certified question in the negative. Despite the fact that the question explicitly asks whether any exclusion in the policy applies, Columbia does not address any policy exclusions in its argument. It did allege in its declaratory-judgment complaint that the “Expected or Intended Injury” exclusion applied to bar coverage for the homeowners’ fraud claim. Specifically, the policy provided that it did not apply to ‘“[bjodily injury* or ‘property damage’ expected or intended from the standpoint of the insured.” This exclusionary language has been interpreted to exclude “only the intended injuries flowing from an intentional act.” Talley v. MFA Mut Ins. Co., 273 Ark. 269, 273, 620 S.W.2d 260, 262 (1981) (quoting 10 Couch on Insurance 2d, § 41.6). Because there is nothing in the pleadings before us to indicate that Arkansas Infrastructure intended both the act and the injuries flowing therefrom, I would hold that this exclusion does not bar coverage for the alleged property damage. For all of these reasons, I dissent. . I note that, while it does not apply in this case, the Arkansas General Assembly effectively superseded Holder in 2011. See J-McDaniel Constr. Co., Inc. v. Mid-Continent Cas. Co., 761 F.3d 916 (8th Cir.2014). Act 604 of 2011, now codified at Arkansas Code Annotated section 23-79-155, provided that a CGL policy offered for sale in this state shall contain a definition of “occurrence” that includes both (1) accidents, including continuous or repeated exposure to substantially the same general harmful conditions; and (2) property damage or bodily injury resulting from faulty workmanship. Ark.Code Ann. § 23-79-155 (Repl. 2014). The General Assembly specifically found that our decisions had caused uncertainty over whether CGL policies covered damages caused by faulty workmanship. 2011 Ark. Acts 604, § 1(a)(1). The express purpose of the Act was “to allow an insurance consumer to safely purchase commercial liability insurance coverage at a fair price to insure against the risk of property damage or bodily injury resulting from faulty workmanship.” Id. at § 1(b).