**2011 Ark. 283**

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, as Insurer for Focus, Inc., a Nonprofit and Charitable Entity, Appellant**

v.

**Luther AUSTIN, Melissa and Christopher Brown, Terria Davison, Steve Farmer, Dorothy James, Patricia and Terrance Kimble, Sarah and Jonathan Vaughn, Mary Williams, and Kennan Wilson, Appellees.**

**No. 11–81.**

Supreme Court of Arkansas.

June 23, 2011.

Mitchell, Williams, Selig, Gates & Woodyard, PLLC, by: Stuart P. Miller and Benjamin D. Jackson, Little Rock, for appellant.

Robertson Law Firm, by: Jeanette A. Robertson, Jonesboro, for appellees.

COURTNEY HUDSON HENRY, Justice.

Appellant Philadelphia Indemnity Insurance Company, Inc., as insurer for Focus, Inc. ("Focus"), appeals an order of the Craighead County Circuit Court denying appellant's motion for declaratory judgment and motion to dismiss and ruling that the language of its insurance policy is ambiguous. Appellees include Luther Austin, as administrator of Angela Austin's estate;

Melissa and Christopher Brown, as administrators of G.B.'s estate; Terria Davison, as administrator of M.L.'s estate; Steve Farmer; Dorothy James, as guardian of R.J.; Patricia and Terrance Kimble, as guardians of B.P.; Sarah and Jonathan Vaughn, as administrators of A.V.'s estate; Mary Williams, as guardian of R.R.; and Kennan Wilson. For reversal, appellant argues that the circuit court erred in ruling that the insurance policy at issue was ambiguous. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(b)(5), as this appeal presents a significant issue needing clarification. We affirm.

I. *Facts*

On May 27, 2009, Heath T. Bakken, driving a maroon Chrysler PT Cruiser, traveled southbound in the northbound-inside lane of Highway 63 in Craighead County. At that same time, Angela F. Austin, who drove a white Ford F450 bus, traveled northbound on Highway 63 in the inside lane of traffic. Austin drove the bus as a transport vehicle for Focus, a nonprofit entity formed for children and adults with disabilities. The two vehicles collided, causing several passengers' deaths and serious injuries to others. Following an investigation, an Arkansas State Police officer concluded that fault of the accident rested with Bakken because he drove his vehicle the wrong way on a one-way roadway at an excessive speed.

Bakken was insured by a policy of liability insurance with 21st Century Insurance. The policy had a property-damage limit of $25,000 per accident and bodily-injury coverage that provided a limit of $50,000 in the aggregate. Because most of the subsequent claims exceeded Bakken's policy limits, the Bakken vehicle was underinsured for the damages caused by its driver. At the time of the accident, Focus was

insured by appellant for underinsured-motorist coverage with an alleged damage limit of $1 million.

On August 13, 2009, appellant filed a complaint for interpleader indicating its willingness to pay the insurance-policy proceeds in the total amount of $1 million into the registry of the court. Appellant stated that, upon deposit of the insurance-policy proceeds into ⌊₃the registry, it requested to be discharged from further liability with respect to those proceeds. In its prayer for relief, appellant sought to enjoin appellees from filing any claim relating to the insurance-policy proceeds; to declare that appellant had no further liability beyond the insurance proceeds of $1 million as a result of the accident; to dismiss appellant from further attendance in the action; to declare appellant as discharged and free from liability for any insurance proceeds; and to grant appellant its attorney's fees, costs, and other relief. On September 30, 2009, the circuit court entered an order interpleading appellant's funds, and appellant tendered funds totaling $1 million to the circuit clerk.

Appellees, the injured passengers and the administrators of the deceased passengers' estates, filed answers to appellant's complaint for interpleader. Appellees also filed counterclaims against appellant, as the insurer for the charitably immune Focus, and alleged, inter alia, that Focus negligently failed to restrict its driver, Austin, from using her cell phone while driving the bus. Appellees argued that they were entitled to a judgment against appellant for a share of the interpleaded funds.

In response, appellant filed a motion for declaratory judgment and motion to dismiss the counterclaims, alleging that the insurance policy was a combined-single-limit ("CSL") policy that provided coverage for the maximum amount of $1 million,

regardless of whether the liability coverage or the underinsured-motorist coverage applied. Appellant stated that it had already paid the full amount and requested a dismissal of appellees' counterclaims. Appellant also requested that the court grant its motion for declaratory judgment and motion ⌊₄to dismiss and that the court issue an order ruling that appellant could not be liable for any funds beyond the $1 million previously tendered to the circuit clerk.

Appellees responded, arguing that the interpleaded $1 million was specifically limited to the underinsured-motorist coverage that appellant had with Focus, its insured. However, appellees contended that appellant specifically provided for an additional $1 million in liability coverage in the business-auto declarations of its liability policy. They contended Focus paid a separate premium of $2502 under the business-auto provision, a separate premium of $82 for an auto-medical-pay limit of $5000, and a separate premium of $96 for the underinsured-motorist coverage of $1 million. Appellees requested that the circuit court deny appellant's motion for declaratory judgment and motion to dismiss, as appellant's policy provides specific, separate coverage for both liability and under-insurance.

On August 26, 2010, the circuit court held a hearing and subsequently entered an order denying appellant's motion for declaratory judgment and motion to dismiss. In its order, the circuit court ruled that the language of the policy was ambiguous. Specifically, the court noted that the Declarations Page of the policy clearly showed coverage limits of $1 million for both liability and underinsured-motorist coverage followed by the letters "CSL." The court ruled that "nothing before the court ... indicate[d] that Focus, Inc., the insured, was familiar with the abbreviation 'CSL' and its meaning" and that nothing

clearly confirmed that the policy was a "CSL" policy. First, in response to appellant's arguments, the court ruled that a limitation provision entitled, "Liability Coverage," clearly limited the amount it would pay under its liability coverage and that "the only part of this provision that goes beyond 'Liability' coverage is the prohibition against duplicate payments." The court found that "duplicate payments" indicated being paid twice for the same damages. Next, the court examined a limitation provision entitled "Business Auto Conditions" and ruled that the provision did not apply because the case involved a single insurance policy with one coverage form. Further, the court ruled that underinsured-motorist coverage requires the company to pay what an insured would be entitled to recover, while liability coverage requires the company to pay what an insured would be legally required to pay. The court found that this particular limit of insurance appears to apply only to claims for underinsured-motorist coverage. The circuit court concluded that, in viewing the language of the insurance contract as a whole, the language of the policy was "ambiguous at best" and denied appellant's motion for declaratory judgment and motion to dismiss. Appellant requested certification for an immediate appeal, pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure, and the circuit court issued a certificate in compliance with Rule 54(b). Appellant timely filed its notice of appeal.

## II. *Policy as Ambiguous*

For its first point on appeal, appellant argues that the circuit court erred in ruling that the policy was ambiguous. Specifically, appellant contends that the policy language is unambiguous and that it intended to limit a maximum payment of $1 million for any damage. Appellant asserts that the policy's language indicates that it

is a CSL policy. Appellant further argues that the CSL notations, plus certain limiting language of the policy, unambiguously created a CSL policy with a limit of $1 million.

As a second point on appeal, appellant again focuses on the "limiting language" of the policy and argues that the circuit court based its ruling upon "three unreasonable assumptions" when interpreting the policy's "Limit of Insurance" subsections. Specifically, appellants dispute the following specific rulings: (1) that the circuit court improperly construed the provision under the "Liability Coverage" section instead of the "General Conditions" section; (2) that the circuit court misconstrued the phrase, "duplicate payment," by viewing it in isolation; and (3) that the circuit court misinterpreted a provision regarding damages. Essentially, appellant reasserts that the circuit court did not read the two "Limit of Insurance" subsections harmoniously in arriving at its ruling that the policy was ambiguous. Appellees respond that the circuit court properly found that, when viewing the language of the insurance policy as a whole, the limiting language cited by appellant was ambiguous and that the circuit court's denial of appellant's motion for declaratory judgment and to dismiss was not clearly erroneous.

Because both arguments advanced by appellant involve the interpretation of the insurance policy, we consider them in tandem. The law regarding the interpretation and construction of an insurance policy is well settled in this state. The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). If the language is unambiguous, this court will give effect to the plain language of the policy without resorting to

the rules of construction. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). "In considering the phraseology of an insurance policy the common usage of terms should prevail when interpretation is required." *Cont'l Cas. Co. v. Davidson*, 250 Ark. 35, 42, 463 S.W.2d 652, 655 (1971). On the other hand, if the language is ambiguous, this court will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*

■■ Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible, and, giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable, is error. *Davidson, supra.* A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions. *Id.* (citing *Fowler v. Unionaid Life Ins. Co.*, 180 Ark. 140, 145, 20 S.W.2d 611, 613 (1929) ("Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.")).

■ Here, the issue is whether the insurance policy, which reflects liability coverage of "$1 million CSL" and underinsured-motorist coverage of "$1 million CSL," provides an aggregate coverage of $2 million or a coverage limited solely to $1 million. On the Declarations Page, the policy contains a "Schedule of Coverages and Covered Autos" in a table format. That schedule of coverage provides that the liability coverage contains a limit of $1 million while the underinsured-motorist coverage also contains a limit of $1 million. The initials "CSL" are designated beside each $1 million amount in the limit columns for both liability and underinsured-motorist coverage.

Noting the various provisions of the policy before us, we agree with the circuit court's ruling that the policy is ambiguous. First, the CSL term is not defined in the 248–page policy, nor is it found anywhere else in the policy other than the "Schedule of Coverages and Covered Autos." Appellant points to the affidavit of Coleman F. Henry, senior vice president for appellant, who stated that the policy was a CSL policy and referenced a dictionary of insurance terms that defined CSL as combining the limits of bodily injury liability and property-damage liability. However, this definition did not include an underinsured-motorist-coverage provision, which is applicable in the present case, and the circuit court was free to reject Henry's definition of CSL.

■ Next, contrary to appellant's assertions, the insurance policy does not appear to be limited by the language of two separate sections found in the "Business Auto Coverage Form." Appellant asserts that these two sections apply by limiting the total coverage under its liability coverage and its underinsured coverage to $1 million. In support of its argument, appellant cites Section IV in the "Business Auto Conditions":

SECTION IV. BUSINESS AUTO CONDITIONS

. . .

B. GENERAL CONDITIONS

. . .

8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you

by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

In our review, we agree with the circuit court that this provision is inapplicable to the case at bar and does not serve to limit the language of the policy to $1 million. Here, the plain language of this provision, Section IV(B)(8), indicates that it applies to multiple-policy situations where more than one policy is issued by appellant. While the policy itself refers to four separate coverage forms (i.e., Business Auto Coverage Form, Garage Coverage Form, Motor Carrier Coverage Form, and Truckers Coverage Form), the liability coverage and underinsured-motorist coverage are nevertheless under the same coverage form. Additionally, the single policy number was listed as PHPK350593, and the language of the policy references the policy in the singular by stating, "This policy consists of the following coverage parts for which a premium is indicated." This evidence supports the circuit court's finding that only one insurance policy—not multiple policies—was involved. Because this section is inapplicable to a single-policy situation, the language concerning "the aggregate maximum Limit of Insurance under all the Coverage Forms or policies" is also inapplicable. Therefore, we hold that the circuit court correctly determined that this provision did not apply in these circumstances because appellant issued only one insurance policy to Focus.

Finally, appellant cites to the "Limit of Insurance" language of "Liability Coverage" of the "Business Auto Coverage Form" in support of its argument that the policy unambiguously creates a CSL policy with a $1 million limit of its total coverage. That section provides as follows:

Section II. Liability Coverage.

. . .

C. Limit of Insurance

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

. . .

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form.

In determining the term, "damages," the circuit court also referenced the section's "Coverage" paragraph:

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The circuit court ruled that, with this language, appellant clearly limits the amount that it will pay under its liability coverage and that duplicate payments beyond liability coverage are prohibited.

Appellant maintains that the circuit court misconstrued the phrase, "duplicate payments" in the "Limit of Insurance" subsections by ruling that it meant "being paid twice for the same damages." Appellant claims that the court read this phrase in isolation and that the court should have interpreted "duplicate payments" as referring to payments arising out of the same accident under "Liability Coverage" and "Arkansas Underinsured Motorists

Coverage." However, we disagree. In that regard, appellant's proposed definition would take the phrase, "duplicate payments," out of its appropriate context. Nothing in the language of "Liability Coverage" suggests that "duplicate payments" applies to other various subsections of the policy. Thus, we hold that the circuit court properly reviewed the phrase under Section II's "Liability Coverage."

Appellant also asserts that the circuit court incorrectly found that the limiting language of Section II fits entirely under the "Liability Coverage" section and that "[i]f this provision was placed under the 'General Conditions' section rather than the 'Liability Coverage' section, the issue would be entirely different." In its brief, appellant theorizes that the limiting language would apply if it had been construed under the "General Conditions" subsection, but we note that the circuit court did not construe this language under "General Conditions." We hold that the circuit court properly construed the limiting language of Section II under "Liability Coverage" to limit only liability coverage and nothing else.

In its review of the "Limit of Insurance" language in "Liability Coverage," the circuit court contrasted it with the "Limit of Insurance" language found in the "Arkansas Underinsured Motorists Coverage" provision of the policy, which states as follows:

D. Limit of Insurance

1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Underinsured Motorists Coverage shown in the Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage.

The definition of damages under this "Arkansas Uninsured Motorists Coverage" endorsement provided:

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of any "underinsured motor vehicle." After reviewing the two "Limits of Insurance" side-by-side, the circuit court ruled that

"underinsured coverage requires the company to pay what an insured would be entitled to *recover* where liability coverage requires the company to pay what an insured would be legally required to *pay* (as opposed to recover)." (Emphasis added.) The court further found that the "Limit of Insurance" in the underinsured-motorist provision applied only to those claims for underinsured-motorist coverage.

Appellant claims that the circuit court misinterpreted "damages" relating to liability coverage and underinsured-motorist coverage and that one definition of damages should have applied to the separate subsections. However, the circuit court found a difference in the term "damages," defined in both Section II of "Liability Coverage" and Section A of "Arkansas Underinsured Motorists Coverage." The court found that damages under the liability coverage referred to damages an insured must legally pay while damages under the underinsured-motorist coverage defined damages as those that the insured would be entitled to recover. Contrary to appellant's assertion that the circuit court failed to read the different definitions in a harmonious manner, the circuit court properly found that damages can apply in two distinct ways. Thus, we conclude that these two definitions of "damages" do not

bear upon the question of whether the policy is a CSL policy with a $1 million limit.

For the same reasons articulated by the circuit court, we hold that the CSL notation plus any alleged limiting language of the policy does not automatically create a CSL policy. The term CSL was not adequately defined in the policy, and any limiting language emphasized by appellant as setting a $1 million limit is inapplicable. Section IV applies only to multiple-policy situations, and the "Limits of Insurance" presented in Section II of the "Business Auto Coverage Form" references what an insured would be legally required to pay as opposed to Paragraph D of the "Arkansas Underinsured Motorists Coverage," which references what an insured would be entitled to recover. Thus, the question remains unclear whether a $1 million limit exists for liability coverage or underinsured-motorist coverage or both. We repeatedly have stated that if the language of a policy is susceptible to two interpretations—one favorable to the insured and one favorable to the insurer—then the interpretation most favorable to the insured must be adopted. *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). For the reasons articulated by the circuit court, we conclude that the policy is ambiguous and affirm the circuit court's denial of appellant's motion for declaratory judgment and motion to dismiss.

### III.  *Appellees' Arguments*

For its third point on appeal, appellant argues that the circuit court properly disregarded two arguments made by appellees at the trial level. First, appellees argued below that appellant's interpretation of the policy would create insurance coverage that violates public policy. Second, appellees argued that appellant's pri-

or payments to certain passengers from the policy's no-fault medical-payments coverage conflicted with appellant's proposed interpretation of the policy's coverage limits. However, the circuit court did not rule upon these arguments proposed by appellees. It is well settled that this court will not address an argument on appeal if a party fails to obtain a ruling from the circuit court. *Simpson Hous. Solutions, LLC v. Hernandez,* 2009 Ark. 480, 347 S.W.3d 1. For these reasons, we are precluded from reaching the merits of this particular argument advanced by appellant.

Affirmed.