# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1221
_____

Argonaut Great Central Insurance Company

*Plaintiff - Appellant*

v.

Jerry Casey, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 19, 2012
Filed: November 13, 2012

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

A bus owned by the First Baptist Church of Bentonville (the "Church") was involved in a single-vehicle accident caused by the driver's negligence, resulting in two fatalities and scores of serious injuries. At the time of the accident, the Church was insured by two policies issued by Argonaut Great Central Insurance Company ("Argonaut"), a Commercial Auto Policy (the "Policy") providing $1 million liability

insurance and $1 million uninsured and underinsured motorist ("UIM") insurance --
the subject of this appeal -- and a Commercial Umbrella Policy providing an
additional $1 million excess coverage for auto accidents.

Recognizing that personal injury claims would greatly exceed the policies'
combined coverages, Argonaut commenced this diversity interpleader action, naming
known claimants as defendants and seeking to deposit $2 million into the court's
registry, $1 million for the combined limits under the Policy, and $1 million for the
Umbrella Policy's limit. The claimants asserted counterclaims against Argonaut
pursuant to Ark. Code Ann. § 23-79-210,[1] alleging that the Policy limits include an
additional $1 million. The district court[2] granted summary judgment for the
claimants, ordered Argonaut to pay $2 million under the Policy into the court's
registry (plus an additional $1 million under the Umbrella Policy), and directed entry
of final judgment pursuant to Fed. R. Civ. P. 54(b), permitting immediate appeal of
this issue. Argonaut appeals, arguing the Policy unambiguously precludes
aggregating its liability and UIM coverages. Reviewing the grant of summary
judgment and the interpretation of the Policy *de novo*, and applying Arkansas law, we
affirm. See Ark. Power & Light Co. v. Hartford Steam Boiler Inspection & Ins. Co.,
257 F.3d 853, 856 (8th Cir. 2001) (standard of review).

It is undisputed that the Policy provided the claimants both liability and UIM
coverages -- liability coverage because they are tort victims of the Church's agent, and
UIM coverage because they are insured parties injured by a negligent driver (again,
the Church's agent) whose insurance coverage was less than the sum of their claims.
The district court held that the Policy unambiguously allows aggregate recovery of the

---

[1]Under Arkansas law, the Church as a charitable institution is immune from tort
liability. See Anglin v. Johnson Reg'l Med. Ctr., 289 S.W.3d 28, 31-32 (Ark. 2008).

[2]The Honorable Brian S. Miller, United States District Judge for the Eastern
District of Arkansas.

limits of both coverages. Though the parties have briefed and argued other issues, we address only the issue decided by the district court.

As is common, the Policy is an amalgam of interrelated documents. The declarations page is captioned Commercial Auto Coverage Part, distinguishing it, for example, from Argonaut's Commercial General Liability Coverage Part. Within the Commercial Auto Coverage Part, Argonaut offers at least four "Coverage Forms" of commercial auto insurance: the Business Auto Coverage Form, the Garage Coverage Form, the Motor Carriers Coverage Form, and the Truckers Coverage Form. The Policy includes a Business Auto Coverage Form, which sets forth liability and physical damage coverages in Sections II and III, the Business Auto Conditions in Section IV, Definitions in Section V, and a page of Common Policy Conditions that apply to all Coverage Parts. The Policy then includes attached "endorsements" that add various coverages, exclusions, and provisions mandated by the governing insurance laws of a particular State. At issue here are the liability coverage provided in Section II of the Business Auto Coverage Form and the UIM coverage provided in the Arkansas Uninsured and Underinsured Motorists Coverage endorsement.

Argonaut argues that three provisions limit the claimants' recovery to the higher of *either* the liability *or* the UIM coverage, that is, to $1 million: (1) the "Two or More Coverage Forms or Policies Issued by Us" provision in the Business Auto Coverage Form, (2) the "Limit of Insurance" provisions in the Business Auto Coverage Form and the UIM endorsement, and (3) the "Other Insurance" provision in the Business Auto Coverage Form as modified by the UIM endorsement. Our task in construing these provisions under Arkansas law is a well-traveled road:

> The law regarding construction of an insurance contract is well settled. If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against

the insurer. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation.

Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001).

Before discussing the three provisions on which Argonaut relies, we think it is critical to examine the "Coverage" section of the UIM endorsement, which the parties either ignored or overlooked:

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the . . . driver of . . . an "underinsured motor vehicle". . . .

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle," we will pay under coverage only if **a.** or **b.** below applies:

   **a.** The limit of any applicable liability . . . policies have been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made . . . .

   However, this Paragraph **b.** does not apply if the "underinsured motor vehicle" is insured by us for Liability Coverage.

Two aspects of this provision are significant to the issues before us. First, the first clause confirms what Argonaut has conceded in this case -- the definition of "underinsured motor vehicle" includes a vehicle that has liability coverage provided in the same policy as the UIM endorsement. In other words, Argonaut provides UIM coverage, for example, to passengers in the auto of its own insured if the limits of liability coverage provided by Argonaut does not cover their claims. Second,

-4-

Argonaut will pay under its UIM coverage only *after* the "limit of any applicable liability . . . policies have been exhausted." In other words, Argonaut's UIM coverage is explicitly *additional or sequential* to any liability coverage that may apply, including its own. With the UIM coverage so clearly stated as an aggregate coverage, it would take a contrary limiting provision of the utmost clarity to render the liability and UIM coverages mutually exclusive.

The first two provisions on which Argonaut relies require little discussion. (1) The "Two or More Coverage Forms" provision appears in Section IV of the Business Auto Coverage Form:

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

Argonaut argues this provision precludes aggregating the liability and UIM coverages because they are separate "Coverage Forms." The Supreme Court of Arkansas rejected this contention in construing a policy issued by an insurer that offered the same commercial auto Coverage Forms offered by Argonaut. The Court held that passengers injured while riding in a charity van could recover under both the liability and UIM coverages in the charity's auto policy because "Coverage Form" in this provision referred to the Business Auto Coverage Form. The UIM endorsement was a modification of that Coverage Form, not a separate coverage form. Philadelphia Indem. Ins. Co. v. Austin, No. 11-81, -- S.W.3d --, 2011 Ark. 283, at *8-9, 2011 WL 2477219, at *4 (June 23, 2011). On this issue, Philadelphia Indemnity is controlling.

(2) "Limit of Insurance" provisions appear in both the Business Auto Coverage Form and the UIM endorsement. The Business Auto Coverage Form provides:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

\* \* \* \* \*

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

Similarly, the UIM endorsement provides:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages and resulting from any one "accident" is the Limit of Insurance for Uninsured and Underinsured Motorists Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Part.

Argonaut argues these provisions limit recovery to the highest limit of any one type of coverage -- in this case, $1 million. The Supreme Court of Arkansas rejected this contention in Philadelphia Indemnity, concluding that the provisions limited recovery *under each type of coverage* but did "not bear upon the question of whether" claimants may aggregate recoveries *across* these types of coverage. 2011 WL 2477219, at *6. Argonaut argues that its Policy provisions, unlike those at issue in Philadelphia Indemnity, unambiguously preclude "duplicate payments" of Business Auto liability and UIM endorsement coverages. We agree with the district court that

the differences in policy language are immaterial because the decision in <u>Philadelphia Indemnity</u> turned on the Court's conclusion that the reference to "duplicate payments" meant "being paid twice for the same damages." 2011 WL 2477219, at \*5. That conclusion is consistent with the plain meaning of the word "duplicate." <u>See</u> New Oxford Am. Dictionary 539 (3d ed. 2010). Thus, both Policy provisions only prohibit *double* payments, from any coverage source, for the same claimant injuries. Here, no claimant seeks to recover more than his or her damages incurred in the accident. It is the claimants' discrete claims in the aggregate that exceed the combined limits of all coverages in the two Argonaut policies. Thus, on this issue, too, <u>Philadelphia Indemnity</u> is controlling.

(3) The third provision on which Argonaut relies -- the "Other Insurance" provision in the Business Auto Coverage Form as modified by the UIM endorsement -- was not at issue in <u>Philadelphia Indemnity</u>. The UIM endorsement provides:

> 1. **Other Insurance** in the Business Auto and Garage Coverage Forms . . . are replaced by the following:
>
> If there is other applicable insurance available under one or more policies or provisions of coverage:
>
> > a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.
> >
> > b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.
> >
> > c. If the coverage under this coverage form is provided: (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our

> share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.
> . . .

Argonaut argues that "coverage form" in clause 1.a. means "type of insurance." Because liability and UIM insurance provide coverage against distinct risks -- the risk of liability for one's own negligence, and the risk of being injured by an underinsured negligent driver -- they are different "coverage forms." Therefore, the combined claims are subject to the higher applicable limit, in this case $1 million. The claimants argue that "coverage form" in this provision refers to the four commercial auto Coverage Forms Argonaut offers. As the UIM endorsement is part of the Business Auto Coverage Form, this provision does not preclude recovery of both coverage limits.

Argonaut's contention that "coverage form" simply means "type of coverage" might be plausible in other contexts, but it is inconsistent with use of the term "Coverage Form" elsewhere in the Policy. Most tellingly, the UIM endorsement begins by stating that it "modifies insurance provided under" four named "Coverage Forms," including the "Business Auto Coverage Form." In addition, the schedule of uninsured and underinsured motorist limits and premiums is set forth in the Policy's Business Auto Declarations, along with schedules of limits and premiums for the liability, comprehensive, collision, and auto medical payments coverages (which, like the UIM coverage, is provided by an endorsement). This Policy format is inconsistent with the argument that the coverage provided by the UIM endorsement is a separate "Coverage Form," rather than an additional coverage that is part of the Business Auto Coverage Form. In construing an insurance contract, "the different clauses . . . must be read together . . . so that all parts harmonize." Smith v. S. Farm Bureau Cas. Ins. Co., 114 S.W.3d 205, 207 (Ark. 2003). Thus, the "Other Insurance" provision does not come close to overriding the plain meaning of the UIM coverage provision. The district court correctly read the provisions of the UIM endorsement and the Business

Auto Coverage Form as unambiguously providing "that an insured may recover under both the liability and UIM coverages."

We are not persuaded by a contrary decision, on which Argonaut heavily relies, of federal courts construing Maryland law . Bhd. Mut. Ins. Co. v. Carter, No. 11-cv-01326, 2012 WL 254018, at *4 (D. Md. Jan. 26, 2012), aff'd, No. 12-1291, 2012 WL 3105150, at *1 (4th Cir. Aug. 1, 2012). Of course, we may not follow this decision to the extent it is inconsistent with Arkansas law as construed in Philadelphia Indemnity. Moreover, we do not agree with the district court in Brotherhood Mutual that "allowing uninsured motorist coverage . . . to 'spring forth' any time claimants exhausted their liability insurance coverage" is an "absurd result" because it provides more liability insurance than was bargained for. The dual-coverage issue in this case only arises if a claimant is both covered by the negligent driver's liability insurance policy *and* is an "insured" for purposes of the same policy's UIM endorsement. Thus, this decision will not result in a wholesale expansion of liability insurance coverage. Moreover, this case illustrates why organizations whose members or employees frequently travel in covered autos (particularly charities) need this type of *aggregate* commercial auto coverages so that they insure against the organization's risk of liability and provide UIM protection for passengers who may be injured due to the negligence of the organization's driver as well as negligent drivers of other vehicles.

For these reasons, the district court's Orders dated December 8, 2011, and January 11, 2012, are affirmed.

_____