# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2596

_____

Pacific Life Insurance Company

*Petitioner - Appellee*

v.

Katie Blevins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: January 10, 2024
Filed: February 8, 2024

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

BENTON, Circuit Judge.

Three days after paying for life insurance, Dr. Travis Richardson died. Pacific Life Insurance Company sued for a declaratory judgment that it did not owe benefits to his beneficiary, Katie Blevins. She counterclaimed for declaratory judgment, adding claims of bad faith, promissory estoppel, and apparent authority. The district

court[1] granted summary judgment to Pacific Life, rejecting Blevins's claims. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On January 27, 2021, Travis Richardson applied for a life insurance policy with Pacific Life, through Lamar D. Breshears, an independent agent using the services of Champion Insurance Agency. His fiancé, Katie Blevins, was the sole beneficiary. Champion submitted the application to Pacific Life on February 1, instructing Pacific Life to physically mail the policy (when approved) to Champion. This was Champion's and Breshears's typical procedure of delivering policies. The application, signed by Richardson, said:

> Except as provided in the terms or conditions of any *"Temporary Insurance Agreement (TIA)"* that I may have received in connection with this Application, coverage will take effect when the Policy is delivered and the entire first premium is paid only if at that time each Proposed Insured is alive, and all answers in this Application are still true and complete.

Richardson did not purchase any TIA. The application also said that if Pacific Life amended the policy, there would be "an *Amendment to Application* form that must be signed by all applicable parties, prior to or at the time of delivery of this Policy."

 Pacific Life approved the policy on March 11. Richardson immediately paid the first monthly premium. That day, Pacific Life uploaded a copy of the policy to its online Portal (which Breshears accessed).

Pacific Life determined it needed an Amendment to Application to correct errors in it (including Richardson's birthdate and zip code, and completing the section about whether someone else would be the primary policyholder). On March

---

[1]The Honorable James Moody, Jr., United States District Judge for the Eastern District of Arkansas.

12, Pacific Life physically mailed a copy of the policy to Champion, along with the Amendment to Application and a Policy Delivery Receipt—both to be approved and signed by Richardson. After repeating some information from the application, the Receipt added that when Richardson paid his premium, he "may be paying premiums for a period of time during which no coverage was provided under the terms of the Policy." The package mailed to Champion included "New Policy Delivery Requirements"—documents that Richardson needed to sign—including both the Amendment and the Receipt.

Also on March 12, Richardson asked Breshears when his policy would be active. Breshears replied, "Today. If you were to die today, the policy would pay out a death benefit." Richardson died on March 14. The next day, the policy package reached Champion.

On March 25, Pacific Life refunded the first monthly premium. In July, Pacific Life sued for a declaratory judgment that the policy was never delivered and not in force. Blevins counterclaimed for a declaratory judgment that the delivery requirement had been waived, or alternatively that the policy had been constructively delivered—adding claims of bad faith, promissory estoppel, and apparent authority on the part of Breshears. The district court awarded summary judgment to Pacific Life and dismissed Blevins's claims. She appeals.

## II.

Blevins argues that the policy is ambiguous about whether delivery and acceptance of a complete and accurate policy were preconditions of coverage. This Court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "The interpretation of a contract is a question of law, reviewed de novo." *Weitz Co. LLC v. MacKenzie House, LLC*, 665 F.3d 970, 975 (8th Cir. 2012). Arkansas law controls this diversity action.

Richardson's application was incorporated into the policy (the application says it "will be attached to and made part of the policy"). The policy, application, and delivery receipt, require delivery and acceptance of the policy before there is coverage. The policy states, "The method for determining the Death Benefit is described in the Death Benefit section of this Policy." The "Death Benefit" section includes these provisions:

- **Death Benefit** – This Policy provides a Death Benefit on the death of the Insured while this Policy is In Force. . . .
- **When the Policy is In Force** – This Policy is In Force as of the Policy Date, subject to your acceptance of the delivered Policy and payment of the initial premium. . . .

The Policy elsewhere defines "In Force":

- **In Force** – means a Policy is in effect and provides a Death Benefit on the Insured.

Blevins argues, however, that two other provisions in the policy conflict with the preconditions, rendering them ambiguous.

> It is [] a cardinal rule of insurance law that a policy of insurance is to be construed liberally in favor of the insured and strictly against the insurer or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted.

*Smith v. Prudential Prop. & Cas. Ins. Co.*, 10 S.W.3d 846, 850 (Ark. 2000). Ambiguity exists "when a provision is susceptible to more than one *reasonable* interpretation." *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 740 (Ark. 1998) (citation omitted). When interpreting a contract, "[t]he language in an insurance policy is to be construed in its plain, ordinary, and popular sense."

***Philadelphia Indem. Ins. Co. v. Austin***, 383 S.W.3d 815, 819 (Ark. 2011) (citation omitted). Contracts are to be read as a whole, and courts should not interpret a contract to render provisions meaningless. ***Id.*** at 820 ("Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible, and, giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable, is error."). The fact that a term is undefined does not render it ambiguous. *See **Smith v. S. Farm Bureau Cas. Ins. Co.***, 114 S.W.3d 205, 207 (Ark. 2003) (Plaintiff "argues that because the term 'family' was not defined by the policy, it must be ambiguous. There is no authority for this argument.").

Blevins invokes a heading and a sentence in the policy. First, the policy's "Specifications" include a heading: "Summary of Coverages Effective on the Policy Date." Second a sentence in the definitions says that Policy Date

> means the date the Policy and associate riders become effective. Policy and rider months, quarters, years and anniversaries are measured from this date.

Blevins argues that these provisions make ambiguous the delivery and acceptance preconditions. She contends that "the only logical way to read these policy terms is that they mean coverage under the policy is available as of the 'Policy Date,'" and that "[t]his portion of the policy, thus, does not make availability of coverage dependent on delivery to anyone in any manner." To determine whether ambiguity exists, this court must determine whether Blevins' interpretation is "reasonable," when the contract is read as a whole. ***Unigard***, 962 S.W.2d at 740.

Blevins focuses on these two provisions to void the preconditions reiterated in the policy, application, and receipt. "[I]t may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it." ***First Nat'l Bank of Crossett v. Griffin***, 832 S.W.2d 816, 819 (Ark. 1992), *quoting **Fowler v. Unionaid Life Ins. Co.***, 20 S.W.2d 611, 613 (Ark. 1929). *See **Philadelphia Indem. Ins. Co.***, 383

-5-

S.W.3d at 820 (Contracts should not be interpreted to render provisions meaningless when other reasonable interpretations are available.).

Blevins's interpretation is unreasonable because it would render meaningless the repeated delivery and acceptance preconditions. "A long line of cases decided by the Arkansas Supreme Court recognize the validity of requiring compliance with a condition precedent under which a policy must be delivered while the prospective insured is still living and in good health at the time of delivery of the policy." ***Clark v. First Colony Life Ins. Co.***, 670 S.W.2d 470, 471 (Ark. Ct. App. 1984).

Pacific Life's interpretation—adopted by the district court—does not render meaningless the "Policy Date" provision. That the policy "becomes effective" under the "Policy Date" definition is distinct from the policy being "In Force." Being "In Force," the prerequisite for a death benefit, expressly requires delivery and acceptance. The definition of "Policy Date"—the date when the policy becomes "effective"—functions to measure intervals across the policy's lifespan.

The requirements for the policy to be "in force" versus "effective" also highlight the distinction. "In Force" requires the policy to have taken effect on the Policy Date, *plus* additional requirements. "In Force means a policy is in effect *and* provides a Death Benefit." (emphasis added to the definition of "In Force"). The "Death Benefit" section specifies, "This Policy is In Force as of the Policy Date, *subject to* your acceptance of the delivered Policy and payment of the initial premium." (emphasis added). Being "effective," on the other hand, is exclusively tied to the Policy Date. ("Policy Date . . . means the date the date the Policy and associated riders become effective.")

The district court properly ruled, "While the term 'policy date' clearly was confusing . . . it did not neutralize the delivery and acceptance requirements." The delivery and acceptance preconditions are unambiguous. Blevins's interpretation would render meaningless many clauses and create overlapping, redundant

definitions. When the contract is considered as a whole, the policy being "in force" versus "effective" can reasonably be read as distinct concepts.

## III.

Blevins contends that even if the delivery and acceptance preconditions apply, summary judgment was inappropriate. She believes that there is a genuine issue of material fact whether the policy was constructively delivered and accepted. She argues that the policy was constructively delivered when Pacific Life posted a version of the policy to its portal, which Richardson's agent Breshears accessed.

Under Arkansas law, "if the policy was mailed to [the agent] unconditionally for the sole purpose of delivery to the assured," the transmission of the policy from the insurance company to the agent would constitute constructive delivery. *New York Life Ins. Co. v. Mason*, 235 S.W. 422, 423 (Ark. 1921). Here, the district court correctly found this standard was not met. The online availability of the policy to Richardson's agent is not transmitting the policy to the agent "unconditionally for the sole purpose of delivery to the assured." *Id.* Regardless, the policy that was physically mailed to Champion (according to Breshears's instructions) required Richardson to sign the Amendment and Receipt. (Pacific Life offered electronic delivery of policies via E-signature, but Richardson did not select this service.) The policy was not constructively delivered.

Likewise, the policy was never accepted by Richardson. Blevins argues that Richardson's submission of the application and payment of the first premium constitute acceptance, or that he accepted the policy by emails with Breshears asking when he would be covered. None of these acts constitute acceptance. *See S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d at 206–07 ("the language of an insurance policy is to be construed in its plain, ordinary, and popular sense") (internal quotations omitted). The application itself is not acceptance, as the policy does not yet exist. The policy draws a distinction between payment and acceptance, requiring "acceptance of the delivered Policy *and* payment of the initial premium." (emphasis

-7-

added).  *See **Watts v. Life Ins. Co. of Arkansas***, 782 S.W.2d 47, 49 (Ark. Ct. App. 1990) (finding that a policy was not active even though the premium had been paid). Emails to Breshears asking the start-date of the policy and indicating a desire for coverage were not an acceptance of the final policy, which required acceptance of amendments before coverage.

The delivery and acceptance preconditions were not satisfied.  When Richardson died, coverage was not "in force," and no death benefit was owed.[2]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[2]Blevins's bad faith claim is foreclosed by the fact that no payment was owed under the policy.  Under Arkansas law, a bad-faith claim requires "dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured." ***State Auto Prop. & Cas. Ins. Co. v. Swaim***, 991 S.W.2d 555, 559 (Ark. 1999).  Since Pacific Life had no obligation, it could not have acted in bad faith.